**Joseph R. ARRIOLA, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–81.**

Court of Criminal Appeals of Oklahoma.

Nov. 6, 1973.

Lui J. Antonelli, Rhoads, Johnson & Antonelli, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., for appellee.

OPINION

PER CURIAM:

Appellant, Joseph R. Arriola, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Comanche County, Oklahoma, Case No. CRF–72–233, for the offense of Burglary in the First Degree. His punishment was

fixed at a term of seven (7) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

There are several assignments of error raised by the defendant's brief; however, for the purposes of this opinion it is only necessary to consider one and that is the defendant's contention that the trial court erred in admitting the testimony of the complaining witness, Mrs. Charles Hood, concerning her in-court identification of the defendant.

The evidence reflects that Mrs. Hood was an eyewitness at the scene of the offense, her home. Subsequent to the offense and prior to trial, she identified the defendant in a police lineup. Prior to and during the lineup, the defendant was not represented by counsel and specifically did not waive his right to same.

The evidence further reflects that at approximately 1:30 a. m. on the night in question, the complaining witness awoke to find a man of short stature who appeared to be of oriental descent standing in her darkened bedroom. The intruder told her not to scream or he would kill her and then fled after the witness screamed. The witness testified that although her room had no internal lighting, a certain amount of light filtered in through a partially curtained window and she was able to observe the intruder for approximately fifteen seconds.

At approximately 5:00 a. m., a Lawton police officer contacted the complaining witness and notified her that the police intended to hold a lineup at approximately 10:30 that morning and that they had caught an individual with certain items belonging to the Hood family. There is some conflict in the evidence as to whether the officer informed Mrs. Hood that the suspect was of oriental descent. Mrs. Hood testified that she was not so advised and the officer stated that he did not recall having done so, although he may have.

Prior to the lineup the defendant was given a form waiver of his Miranda rights, including his right to counsel. The defendant refused to sign same and there is no evidence in the record to reflect that the defendant made any voluntary waiver of his right to counsel as it pertains to the in-custody lineup.

The lineup procedure consisted of exhibiting the defendant, an oriental of Guamanian descent, along with four Caucasian males. Mrs. Hood was accompanied at the lineup by other victims of recent intrusions. Mrs. Hood identified the defendant, although one of the other victims could not so identify him. At the subsequent preliminary hearing, the hearing on the defendant's motion to suppress, and at the trial, Mrs. Hood testified that her identification of the defendant was based solely upon her awaking to find the defendant in her bedroom and that said identification was not influenced by the lineup or any subsequent meeting. The trial judge, after the hearing on the motion to suppress, found that Mrs. Hood was positive concerning her identification being based solely on her observation of the defendant in her bedroom. He therefore found that the in-court identification of the defendant was based upon an independent observation and was not tainted or poisoned by any in-custody lineup, whether or not that lineup was in violation of the constitutional rights of the defendant.

In the landmark case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149, the United States Supreme Court held in substance that a police lineup is a critical stage in a criminal proceeding and that a suspect appearing in said lineup is entitled to be represented by counsel or must make knowledgeable, voluntary, and intelligent waiver of said right. The Court further held as follows:

"* * * A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification. * * * Suggestion

can be created intentionally or unintentionally in many subtle ways. [Footnote omitted] And the dangers for the suspect are particularly grave when the witness' opportunity for observation was *insubstantial,* and thus his susceptibility to suggestion the greatest." (Emphasis added)

In Thompson v. State, Okl.Cr., 438 P.2d 287, this Court held that when the issue of an extrajudicial identification such as an in-custody police lineup without the assistance of counsel or an effective waiver of same is raised, then the trial court should conduct an evidentiary hearing outside the presence of the jury to determine if the witness can identify the defendant independent of the lineup identification, taking into consideration those factors set out in the *Wade* case, *supra,* and the cases cited therein. Among these factors for consideration are the conduct of the lineup itself and the opportunity to observe the alleged criminal act.

In the *Thompson* case, this Court suggested certain procedures to be followed by law enforcement officials when conducting an in-custody lineup. These procedures include the following:

"1. The suspect should be advised of his right to be represented by counsel and to have counsel present if he so desires. He should be further advised that he does not have a right to refuse to participate in the lineup.

"2. The witness or victim attending such lineup should be advised of the purpose for which it is being conducted but the officers should not, directly or indirectly, single out one suspect and suggest that he is the person being sought.

"3. Other people participating in the lineup should be of the same general weight, height, age, color and race, whenever possible, and the suspect should not be clothed in such a manner as to attract special attention or make him stand out from the other persons in the lineup.

\* \* \*

"6. Not more than one victim should be present at the lineup at the same time. Victims previously having attended a lineup should not be allowed to converse with other victims prior to their viewing the lineup."

In the instant case, Mrs. Hood was advised by the police that they had a suspect in custody who had her husband's billfold and the family's stereo components in his possession. There is some question as to whether she was also advised that the suspect was of oriental descent. Mrs. Hood was then allowed to view the lineup in the presence of the other victims. The defendant was compelled to appear in a lineup wherein he was the only person of oriental racial characteristics. He was further compelled to take part in said lineup without the presence of counsel after he had specifically refused to waive his right to same. For the above reasons, it is the opinion of this Court that the lineup proceeding was grossly in error.

Taking into consideration said procedural error and the conditions of the original confrontation between the intruder and Mrs. Hood (awakening from sleep, being in a dark bedroom lit only by street light filtering in through a partially curtained window, being immediately threatened, and the short duration of the observation), it is the further opinion of this Court that in this particular case and based on these particular facts this Court cannot rely on the witness's positive statement that her in-court identification was not influenced by the suggestiveness of said lineup. We therefore hold that the trial court erred in admitting the in-court identification of the defendant by Mrs. Hood and this case is reversed and remanded for new trial consistent with the provisions contained herein.