Michael Leo **PARKHILL**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–76–537.

Court of Criminal Appeals of Oklahoma.

March 31, 1977.

Rehearing Denied April 13, 1977.

Tony L. Waller, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The Appellant, Michael Leo Parkhill, hereinafter referred to as defendant, was charged, tried before a jury in a two-stage proceeding and convicted in the District Court of Tulsa County, Case No. CRF–75–1407, of the crime of Burglary in the First Degree After Former Conviction of a Felony. Punishment was assessed at a term of thirty (30) years under the direction and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in accordance with the verdict, the defendant has perfected his timely appeal.

Briefly stated the evidence adduced at trial is as follows: Barbara Smith testified that on June 21, 1975, her husband was away attending military training and that she and her five year old daughter were sleeping together in the same bed. At approximately 4:00 a. m. she awoke to find a man standing over her bed with his hands on her crotch area. The witness screamed and the man fled the room and left the house through a window in the daughter's bedroom. The witness then made an in-court identification of the defendant as the intruder, stating that he lived next door and that she had occasionally seen him in the yard and spoken to him. Mrs. Smith further testified that within a minute she called the police and that the defendant was arrested upon their arrival. She further related that she never gave the defendant permission to be in her home, that a part of the curtain on her daughter's window had been pulled down and that the screen on the window had been pulled loose. Pictures of the outside of the window and the interior of the daughter's room were introduced into evidence.

On cross-examination the witness stated that the Parkhill family had lived next door for a few months and that she had loaned the defendant and his brother, Ron Parkhill, tools which they had returned and that there had never been any trouble between them. She further stated that she awoke from a sound sleep, that she was not wearing her glasses which she needed for reading, that the man was there long enough for her to see his face clearly, that she kept a bathroom light on every night but could not remember turning it on that night, that there was moonlight from the window, that she described the defendant to the police as being "six feet or a little bit under", that she remembered no distinguishing facial characteristics or tatoos on the hands, and that the police returned from next door for a further description.

The state's only other witness was Tulsa Police Officer Eddie Newman who testified that at approximately 4:00 a. m. on the morning in question he received a call that there was a burglary in progress. He arrived at the Smith home approximately five minutes later and noticed a pried window. Entering the bedroom with the pried window he found a curtain awry and a chair turned over near the window sill. He further related that Mrs. Smith described the intruder as being "a white male, slight build, little less than medium height and had, . . ., dark shaggy hair and a little bid balding." He then went to the house next door and arrested the defendant

who was wearing a shirt and pants. The officer found the defendant in the company of another male about the same age and an older female. He then identified state's Exhibit 3 as a close-up shot of the window reflecting the pried screen. The state then rested.

The defense called Randy Finley who testified that on the night in question he was a house guest at the Parkhill residence and slept in the defendant's bedroom. At approximately 3:30 a. m. the defendant and Ron Parkhill came home from a local night club, went into the defendant's bedroom and talked for awhile. They then took off their clothes and went to bed. The witness was later awakened by knocking at the front door. The defendant got up and went into the living room dressed only in his underwear. The only other people present in the house was the defendant's brother, mother and stepfather. The defendant was described as being five feet five inches to five feet six inches tall.

The defense then called Ron Parkhill who testified that on the evening in question he was with Randy Finley, the defendant and two others who all went to a local club. Around 1:00 a. m. they brought Randy, who was under age, back to the defendant's house and then went to another club. The witness and the defendant came home between 3:30 and 4:00 a. m., had a conversation with Randy, undressed and went to bed. Subsequently police officers came to the door and the defendant answered wearing his underwear. He also described the defendant as being five feet six inches tall and having tatoos on his hand. The defense then rested. After the jury determined guilt the state put on proof of the defendant's two prior felony convictions.

■ The defendant's first assignment of error urges that the trial court erred in allowing Mrs. Smith to make an in-court identification of the defendant due to the poor lighting conditions, the immediate exit of the intruder and after she had given an oral description of the intruder as being approximately six feet tall when in fact he was much shorter. In support of his contention the defendant cites *Arriola v. State*, Okl.Cr., 520 P.2d 690, wherein an intruder entered the room of a sleeping victim under similar lighting conditions. However *Arriola* involves an in-court identification which was prejudicially tainted by an extrajudicial lineup which was most suggestive. In the instant case the identification of the defendant by the victim is positive and there is no evidence to indicate that her in-court identification was in any way influenced by an extrajudicial identification. Therefore the strength or weakness of the identification of the defendant was a matter for the consideration of the jury. See *Bennett v. State*, Okl.Cr., 495 P.2d 413, and *Jones v. State*, Okl.Cr., 468 P.2d 805. The defendant's first assignment is without merit.

■ The defendant's next assignment of error contends that the state totally failed to prove that the intruder had the criminal intent to commit rape at the time he entered the home. The pertinent portion of 21 O.S. § 1431 reads as follows:

"Every person who breaks into and enters in the night time the dwelling house of another, in which there is at the time some human being, with intent to commit some crime therein, . . . "

The information alleges that the defendant forcibly broke open the outer window of the Smith dwelling and entered "without the consent of said occupant, with the unlawful, felonious and burglarious intent then and there to commit the crime of rape".

In *Logan v. State*, 95 Okl.Cr. 76, 239 P.2d 1044, this Court held in paragraphs one and two of the syllabus as follows:

"1. Before a conviction may be sustained for the crime of burglary in the first degree all of the elements of the offense must be proved by the state, including the intent to commit a crime in the dwelling house, but this intent may be proved by circumstantial evidence.

2. The question as to whether one intended to commit a crime in a dwelling house is determined by the intent of the individual at the time the unlawful entry

was made. It is not necessary that the crime actually be committed in the dwelling house, as a person who had the intent to commit rape might change his mind when confronted by a determined and outraged woman."

See also 75 C.J.S. Rape § 77 which states that evidence of an accused entering the room where a female was asleep and moving her clothing or bedclothes, or touching her person is usually held sufficient to convict of assault with intent to commit rape.

In *Matthews v. State,* 91 Okl.Cr. 285, 218 P.2d 393, this Court further held that it is seldom that a case can be found where a court can, as a matter of law, determine from the evidence that the intent to ravish did or did not exist. Where the intent rests in inferences to be deduced from the facts proven, its existence or nonexistence must be submitted to the jury for their determination.

In the instant case Mrs. Smith testified that she awoke to find the defendant in her bedroom and bending over her bed with his hand rubbing her crotch area. This is sufficient circumstantial evidence to permit the trial court to submit the issue of intent to the jury. The defendant's second assignment is without merit.

 The next assignment of error raised by the defendant argues that the prosecuting attorney committed reversible error by making an improper and prejudicial argument to the jury which amounted to a comment upon the defendant's failure to testify in his own behalf. The comment complained of is as follows:

"MR. HOPPER: . . . That's why he tells you that, to get you away from the testimony that you heard on the witness stand and he is criticizing the state for not calling witnesses. Well he could have called witnesses sitting here in this courtroom ever since the trial started—

MR. GULLEXSON: I'm going to object to this.

THE COURT: Overruled.

MR. GULLEXSON: Exception. Go ahead.

MR. HOPPER: And that is the defendant's mother that Officer Newman said opened the door while her son was sitting there fully clothed."

From the above it is apparent that the remark made by the prosecutor was not an attempt to comment upon the defendant's failure to testify in his own behalf. It was only a response to criticism by the defense as to the number of witnesses called by the state. The prosecutor was referring to the defendant's mother, who the transcript indicates was in the courtroom. The defendant's third assignment is meritless.

 The defendant's next assignment of error contends that the verdict returned by the jury was contrary to law and not supported by the evidence. The defense argues that the state presented no evidence to prove breaking and entry. However, both Mrs. Smith and Officer Newman testified that there was a pried screen in the daughter's bedroom. Photographs showing same were introduced. Once the victim screamed the intruder ran to that window. The pried screen and the route of exit provides circumstantial evidence of breaking and entry. This Court has held on numerous occasions that where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility and probative effect of such evidence is for the jury. *Hunter v. State,* Okl.Cr., 478 P.2d 1001.

 The defendant next urges that the court erred in admitting the photographs of the bedroom and window without proper identification and authentication. This assignment is also meritless. Mrs. Smith stated that she was present when the photographs were taken and that they correctly and accurately depict the scene that they purport to portray. Each photograph was then specifically identified by Mrs. Smith. As stated in *Nelson v. State,* Okl.Cr., 288 P.2d 429, cited by both the state and the defense, when a photograph is shown to be a faithful reproduction of whatever it purports to reproduce it is admissible in evidence as an appropriate aid to the jury.

The photographs were certainly most relevant, competent and material and were therefore properly admissible.

■ The defendant's final assignment of error contends that the sentence imposed is excessive and the product of passion and prejudice. In support of his contention the defendant argues that the state interjected the totally unfounded element of an intent to commit rape for the sole purpose of implanting in the minds of the jurors the horror and detestation associated with rape. However, as stated above, the state presented sufficient circumstantial evidence to support the element of intent to commit rape. The argument is meritless.

■ The defendant further contends that the trial court erroneously instructed the jury concerning the full statutory definition of rape when an instruction on forcible rape would have been sufficient under the circumstances contemplated by the evidence, arguing that the full instruction intended only to magnify the element of rape in the minds of the jury all to the prejudice of the defendant. However, the defense failed to object to the instruction as submitted and further failed to offer a requested instruction. As stated in *Tidmore v. State*, Okl.Cr., 341 P.2d 618, where counsel for an accused sits by and offers no objection to the instruction given by the trial court and offers no suggested instruction or instructions covering the matter complained of on appeal, before a reversal is required the error in the instruction, if any, must be of a fundamental nature. In the instant case there is no fundamental error.

■ The defendant finally argues that the prosecuting attorney intentionally and maliciously elicited prejudicial testimony from Officer Newman by asking the officer why he remained at the victim's home for approximately one hour after the arrest. The exchange referred to is as follows:

"Q. Thank you. Officer, how long did you remain at the Smith residence that morning?

A. I'm not sure. I'd say approximately an hour or so.

Q. Why did you stay there that long?

A. Well in this situation I felt it was to the victims benefit that I remain, because I felt there possibly might be some retaliation from the individuals at the suspects home."

It is obvious that the response of Officer Newman amounted to unfounded opinion evidence. However, again no objection was made by defense counsel.

Therefore, we find this assignment of error to be without merit.

On the basis of the foregoing, the defendant's conviction should be and is, hereby, AFFIRMED.

BUSSEY, P. J., and BRETT, J., concur.