Hobson Eugene WILSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-77-135.

Court of Criminal Appeals of Oklahoma.

Aug. 23, 1977.

Benjamin E. Butts, Chandler, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Hobson Eugene Wilson, hereinafter referred to as defendant, was charged in the District Court, Lincoln County Case No. CRF-76-44, with the offense of Distribution of Marihuana, in violation of 63 O.S.Supp.1975, § 2-401. The case was tried to a jury, and a verdict of guilty was returned. Punishment was assessed at two (2) years' imprisonment. From said judgment and sentence defendant has perfected an appeal to this Court.

The State's evidence showed that on Friday, October 17, 1975, at about 10:00 a. m. in the town of Chandler, Oklahoma, Hank Strong purchased a bag of marihuana from defendant. Strong had entered into an agreement with District Attorney investigator Gene Dawson, whereby Strong would be paid $300.00 a month for undercover narcotics work. Strong, however, was not a policeman, nor had he ever received any law enforcement training.

On the morning of the 17th, Strong met with defendant and arranged the purchase of marihuana. Later, they met in a field, where the transaction occurred. At the time, Strong was driving his girl friend's car and was accompanied by her. Defend-

ant was in another automobile in the front seat on the passenger side, with three other persons. The cars parked with the driver's sides next to each other. Defendant gave the bag of marihuana to the driver of the car in which defendant sat, and that driver handed it to Strong. Strong gave $10.00 to the driver of the other car who gave it to defendant. Subsequently, at about 11:00 p. m. on the following day, Strong turned the bag over to Gene Dawson. Prior to delivering the bag to Dawson, although the record is not clear when, Strong marked the bag with his initials and the date, but did not otherwise seal it. The bag was placed by Dawson in an evidence envelope, marked, sealed, and delivered by Dawson to the State chemist, Don Flynt. At trial Flynt testified that the bag contained marihuana.

Two assignments of error are urged on appeal, the first being that the statutory scheme whereby marihuana is classified with barbiturates and amphetamines for penalty purposes, is an irrational and unreasonable exercise of the police power, and therefore a violation of due process of law and equal protection of the laws. However, we decline to reach this issue inasmuch as the relief which defendant requests can be granted him on the basis of his second assignment of error, which contends that it was error to admit the bag of marihuana into evidence over defendant's objection where a proper chain of custody has not been established by the State.

Strong testified that he purchased the bag of marihuana at 10:00 a. m. on October 17 and delivered it to Dawson on October 18 at 11:00 p. m. With regard to where the exhibit was kept until delivered to Dawson, the transcript reveals the following:

"Q. Now, after the transaction was complete out there at the field—

"A. Yes.

"Q. —then you took this plastic bag and you took it home with you?

"A. Yes. Under my possession.

"Q. Right. Where did you put it?

"A. It was either—I either kept it hid in my car or in my home where it would be concealed where nobody else could, as far as I know, could, you know, it could be found until I was able to turn it in.

"Q. Was it sealed or not sealed?

"A. No, it wasn't sealed. It was just in the plastic baggie.

"Q. It was available to you, is that correct?

"A. Yes, it was.

"Q. You could have reached in there and got the contents out of it?

"A. If I wanted, I could.

"Q. I say, you could have done that?

"A. . Right.

"Q. Anybody could have done that, couldn't they?

"A. Yes, they could have.

"Q. And you are not sure where you kept that just overnight?

"A. No I can't be positive.

    *     *     *     *     *     *

"Q. Mr. Strong, getting back to when you took this baggie home with you—

"A. Right.

"Q. —I believe you stated that you kept it in you car part of the time and you kept it in your home part of the time?

"A. Well, it was either one of the two places.

"Q. Well, you had to take it out of the car when you went home?

"A. Right.

"Q. And is that where you went to direct?

"A. Directly after, yes, it was.

"Q. Then did you leave the house?

"A. Later on?

"Q. Yes.

"A. I'm sure I did.

"Q. Well, did you take the baggie with you?

"A. I can't recall.

"Q. In other words, you don't know whether that baggie was still somewhere in your house or was in your automobile? How long were you gone in your automobile?

"A. Probably an hour.

"Q. Then you came back home?

"A. That's correct.

"Q. And did you go out any more that night?

"A. Not that I can recall, I didn't.

"Q. I see. Now, the next day, what did you do the next day? Did you go to work the next day?

"A. I don't recall if I did or not. That would depend on what day that was. If it was a Monday through Friday, I was.

"Q. Well, can you tell this jury about the whereabouts of this baggie during the day of the 17th?

"A. Well, at the time that the way I believe it would have happened, I was in my girl friend's car. And if it was in her car, more than likely I would have probably had it concealed in my home.

"Q. On the 17th?

"A. That's correct.

"Q. You say if it wasn't in your girl friend's car?

"A. Well, at the time, you know, it was, and I'm sure that would have been the thing I would have done would have been to keep it concealed in my home.

\* \* \* \* \* \*

"Q. Where did you put the baggie?

"A. I concealed it under the seat, under my seat.

"Q. In other words, you stuck it under your seat?

"A. Right.

"Q. And what became of it next?

"A. Then I proceeded home. At that time more than likely I did take that baggie and conceal it in my home because of the idea of like, say, being riding around with a bag in the car."

These excerpts reveal that Strong actually did not know where he placed the bag of marihuana between the time he purchased it and the time he delivered it to Dawson. There was thus an obvious "break" in the chain of custody, and it is our opinion that this was fatal to the State's case.

*Faulkenberry v. State*, Okl.Cr., 551 P.2d 271 (1976), is in point. There, the State's evidence merely showed that on one day the arresting officer took control of the marihuana, and that ten days later the State chemist analyzed it. No evidence was presented as to the location of the marihuana for the ten day period, nor was there any testimony as to how the marihuana was delivered to the chemist. The present case is analogous in that in both cases the State was not able to affirmatively prove the location of the marihuana at all pertinent times. The court and jury were thus left to speculate whether the substance delivered to the chemist, in *Faulkenberry*, or Dawson in the present case, was the same substance originally obtained by the State agent.

Considering the above, it is our opinion that it was error to admit the bag of marihuana inasmuch as the State failed to adequately prove the chain of possession, a necessary foundation for admissibility.

For the foregoing reasons, the judgment and sentence is REVERSED and REMANDED with instructions to DISMISS.

BUSSEY, P. J., concurs.