**John David BILLY, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–78–229.**

Court of Criminal Appeals of Oklahoma.

Oct. 31, 1979.

Margaret J. Herrington, Tecumseh, for appellant.

Jan Eric Cartwright, Atty. Gen., William S. Flanagan, Asst. Atty. Gen., Danny K. Shadid, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, John David Billy, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Pottowatomie County, Case No. CRF–77–82, for the offense of Rape in the First Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1114. His punishment was fixed at life imprisonment. From said judgment and sentence, an appeal has been perfected to this Court.

A careful examination of the testimony reveals that on the morning of March 30, 1977, the prosecutrix was awakened by the defendant knocking on her back door. The defendant informed her that the landlord had sent him to measure some windows. She asked the defendant to return after her husband got home. Defendant shoved open the door and entered the apartment. She screamed and the defendant stuffed a gasoline rag into her mouth. Defendant produced a knife, placed it at her throat and stated that "he would kill her if she did not shut up." He continued to hold the knife at her throat while performing an act of sexual intercourse.

Dr. Thomas Avery testified that he examined the prosecutrix on the morning in question. He found live sperm within her vaginal vault. Her tongue was torn.

The arresting officer testified that after advising the defendant of his constitutional rights, defendant admitted having intercourse with the prosecutrix, and stated that the intercourse had been voluntary on her part and that she became angry after he refused to pay her.

Defendant asserts in the first assignment of error that the trial court erred in overruling his motion to dismiss based upon an alleged denial of his right to a speedy trial. The defendant was arrested on March 30, 1977. An attorney was appointed to represent the defendant and a preliminary hearing was held on April 19, 1977. Defendant specifically requested that his case be stricken from the next jury term scheduled for May 2, 1977, because of the necessi-

ty of obtaining a preliminary hearing transcript. In July and August of 1977, the defendant filed motions to have his case set for trial on the "misdemeanor and traffic docket." The motions were overruled and his trial was subsequently held on September 9, 1977.

■ We have examined this assignment of error in the light of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and its progeny, and we are of the opinion that this assignment of error is without merit. The docket for the year 1977, which was issued prior to April 20, 1977, sets forth with clarity the schedule for jury trials for the year. At the time the defendant asked to have his case stricken from the May docket he knew or should have known that if his case was not tried then he would not be tried until the September docket. Considering the length of delay, which was caused primarily by request of the defendant, and since defendant has totally failed to show in any manner how he was prejudiced, we find this assignment of error to be without merit. See *State ex rel. Trusty v. Graham,* Okl.Cr., 525 P.2d 1231 (1974) and *Daniels v. State,* Okl. Cr., 558 P.2d 405 (1977).

Defendant contends in his second assignment of error that the trial court erred in sustaining the State's motion to require him to submit to the giving of blood, saliva and hair samples. He argues that the court's order was in violation of the Fifth Amendment to the United States Constitution and of Article II, Section 21, of the Oklahoma Constitution—both of which are protections against forced self-incrimination—and of his Fourth Amendment protection against unreasonable searches and seizures.

■ With regard to the self-incrimination question, we note first that there is no distinction between the scope of Article II,

Section 21, of the Oklahoma Constitution and the Fifth Amendment of the United States Constitution. See *State v. Thomason,* Okl.Cr., 538 P.2d 1080 (1975). And the United States Supreme Court has determined that the protection given by the Fifth Amendment applies to testimonial evidence, not to physical evidence. See *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). In *Schmerber* the Court held that the Fifth Amendment does not bar the taking of blood samples, and in *Gilbert* the same holding was made for handwriting samples. We do not find saliva and hair samples to be different from blood and handwriting samples.

■ The defendant's Fourth Amendment argument depends on a constitutional right to privacy, which he claims was violated by the taking of the samples. We have previously considered this right in *Caveness v. State,* Okl.Cr., 581 P.2d 475 (1978), and our view is that there is no extra protection given over and above the warrant requirement with its need for a showing of probable cause. In the instant case the matter was taken before the District Court and the judge, after a hearing, ordered the defendant to submit to the taking of the samples. The requirements of the Fourth Amendment were followed and the protections of the Fifth Amendment and the Oklahoma Constitution did not apply. We therefore find this assignment of error to be without merit.

■ In his third assignment of error the defendant complains of remarks made by the prosecuting attorney during closing argument in the second stage. We have studied each of the remarks specified in the defendant's brief,[1] and it is our opinion that

---

1. "The defendant himself testifying before you admitted that he is the same John D. Billy who entered that plea of guilty and was found guilty of Rape Second Degree in Seminole county. "Now, I think that is sufficient proof that he has this prior conviction, and it proves the second page of the information. To get up and try to convince anyone that he went to the

penitentiary for two years because he thought he was pleading guilty to traffic violations is just—I just can't believe that anyone would ever be put in that situation." [Tr. 259].
"MR. THOMPSON: Ladies and Gentlemen, for a man to be able to be railroaded as this defendant claims, I just find wholly unbelievable. We just simply do not have star-chamber pro-

all of the remarks can be considered as fair comments on the evidence.

Defendant alleges in the fourth assignment of error that the trial court erred in allowing into evidence State's Exhibit Nos. 1 through 5, which were respectively the gasoline rag used as a gag, a photograph of the victim, a photograph of the defendant's hand, sperm taken from the victim at the hospital, and the blood, hair and saliva samples taken from the defendant. Defendant argues that there was an incomplete chain of custody relating to Exhibits Nos. 1, 4 and 5 and no chain of custody relating to Exhibits Nos. 2 and 3.

We agree with defendant's allegation that there are some flaws in the chain of custody regarding Exhibits Nos. 1, 4 and 5. However, we disagree with his allegation that the chain was so incomplete as to render the evidence inadmissible. State's Exhibit No. 1 was found by the prosecutrix's mother at the scene. She took the rag to the police station and gave it to a detective. Detective Taylor testified that he received the rag from Detective Martin, placed it in an evidence envelope and transported it to the O.S.B.I. Laboratory. State's Exhibit No. 4 was identified by Dr. Avery as vaginal washings he took from the prosecutrix. He testified that he delivered the exhibit to a detective whose name he could not remember. He further identified State's Exhibit No. 5 as the the samples he took from the defendant. Those samples were placed in an envelope and delivered to Dan Megehee. Investigator Megehee testified that he received the exhibit and delivered it to the State Bureau of Investigation Laboratory.

We are of the opinion that the chain of possession was sufficiently established to sustain the foundation for the admissibility of the exhibits. We have dealt with this issue a number of times. See, for instance, *Trantham v. State*, Okl.Cr., 508 P.2d 1104

ceedings in the State of Oklahoma. That's just unthinkable." [Tr. 260].

"Now, consider also if you give a life sentence, the next time, if there is a next time there is a trial, no one who is present here today is going

(1973); and *Atkins v. State*, Okl.Cr., 572 P.2d 1298 (1977). The chain of evidence for Exhibits Nos. 1, 4, and 5 was sufficiently established to permit their admission, and any remaining doubt could be weighed by the jury in considering probative value.

State's Exhibits Nos. 2 and 3 were admissible without the necessity of establishing a chain of custody. It has long been the rule of this State that photographs are admissible as appropriate aids to the jury, when they are shown to be faithful reproductions of whatever they purport to reproduce. See *Parkhill v. State*, Okl.Cr., 561 P.2d 1386 (1977).

Defendant contends in the final assignment of error that the punishment is excessive. Considering the nature of the offense, the victim, a young mother, and the fact that this is defendant's second conviction for a similar offense, we cannot conscientiously say that the sentence imposed shocks the conscience of this Court. The judgment and sentence is accordingly *AFFIRMED*.

CORNISH, P. J., and BRETT, J., concur.

to be there, and the defendant can get up again and say, 'Well, I didn't even know what we went to trial for. I thought it was traffic tickets.'" [Tr. 267].