**Edward Lee JOHNSON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–80–131.**

Court of Criminal Appeals of Oklahoma.

March 18, 1981.
As Corrected June 2, 1981.

John Michael Johnston, Appellate Public Defender, State of Oklahoma, for appellant.

Jan Eric Cartwright, Atty. Gen., Duane N. Rasmussen, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Edward Lee Johnson, was convicted by a jury in Carter County District Court of Unlawful Delivery of a Controlled Drug. Punishment was fixed at five (5) years' imprisonment and a fine of Five Hundred Dollars ($500.00). Judgment and sentence was imposed on August 26, 1979. From said judgment and sentence, the appellant has perfected his appeal to this Court.

The evidence presented at the trial established that on August 24, 1978, Eugene A. Major, an agent for the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control, traveled to Ardmore, Oklahoma in the company of a confidential informant. His sole purpose for making the journey was to attempt to purchase Preludin, a controlled substance. On arrival in Ardmore, he went to the district attorney's office where an interview was held with his supervisor. Agent Major and his informant then proceeded to a room in a local motel where they encountered the appellant and one Cecelia Ann Lewis. When Agent Major,

now undercover, inquired about the availability of Preludin, he was told by appellant that there was none then available in the room, but a purchase could be made if Major returned in thirty minutes. Major left but returned in thirty minutes and purchased five Preludin tablets from the appellant for $35.00. Major then returned to his room at a different motel where he initialed each tablet, sealed them in an envelope, placed the envelope in his briefcase and then put the briefcase in the trunk of his car where it remained until turned over to the Oklahoma State Bureau of Investigation about two weeks later.

The State also presented testimony from Lynn Kraniak, a forensic chemist for the Oklahoma State Bureau of Investigation. She testified that she received a packet from Agent Major by way of a drop-box in the main lobby of the Bureau of Investigation. She also testified that she cut open the factory sealed end of the envelope and extracted five orange tablets. She then ran a series of presumptive spot tests, an infrared analysis, a gas chromatograph and a mask spectrometer test on the tablets. On the basis of these tests she concluded that the tablets represented a controlled dangerous substance under the Uniform Dangerous Substances Act. Thereafter, the State rested, whereupon the defense moved for a directed verdict and then rested.

The appellant first contends that State's Exhibit 1 was improperly admitted at trial. Specifically, he asserts that a discrepancy in the dates appearing on the envelope, and delay in delivering the exhibit to the laboratory constitute fatal flaws in the chain of custody, warranting reversal. In support of this contention, the appellant cites *Faulkenberry v. State*, 551 P.2d 271 (Okl.Cr.1976), *Conde-Hernandez v. State*, 565 P.2d 705 (Okl.Cr.1977), and *Wilson v. State*, 568 P.2d 342 (Okl.Cr.1977), three cases in which this Court reversed for failure to establish chain of custody.

In *Faulkenberry* a ten day delay in delivering the exhibit was completely unexplained, and no evidence was presented to

indicate whether, how, or if the exhibit was actually transported to the laboratory. Similarly, in *Conde-Hernandez*, the detective in whose custody the controlled drugs were allegedly placed did not testify at trial, resulting in a failure to provide an indispensable link in the chain of custody. Finally, in *Wilson*, there was a clear break in the chain of custody because the narcotics agent did not know exactly where he placed the exhibits after he purchased them. In the instant case, as distinguished from the cases relied upon by appellant, an unbroken chain of custody has been established, since the exhibits were in Agent Major's possession at all times until delivered to the laboratory.

■ The appellant further contends that the discrepancy in the dates written on the envelope by Agent Major creates such a doubt about the authenticity of the exhibit that it should not have been admitted. We disagree. In *Trantham v. State*, 508 P.2d 1104 (Okl.Cr.1973), this Court held that all possibility that demonstrative evidence has been altered need not be negated by the party offering it. If there is only the barest speculation that tampering could have occurred, it is proper to admit the evidence and let what doubt there may be go to its weight. *See also Medina v. State*, 606 P.2d 597 (Okl.Cr.1980); *Billy v. State*, 602 P.2d 237 (Okl.Cr.1979). Therefore, State's Exhibit 1 was properly admitted and any doubts about its authenticity fell within the province of the jury to determine and resolve. This proposition is without merit.

■ In his second assignment of error the appellant contends that the failure of the trial judge to submit the defense of entrapment to the jury constitutes reversible error. We disagree.

The defense of entrapment is well established in American law. The Supreme Court of the United States has drawn a fine but clearly distinguishable line between those cases where the government merely affords opportunities for the commission of a crime and those occasions where the government conceives a crime and pressures an innocent person into the act. *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed.2d 413 (1932); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). The defense of entrapment only applies in the latter category.

It is clear that the appellant has failed to establish entrapment as a matter of law. Furthermore, a close reading of the transcript does not reveal any testimony raising the issue of entrapment. At the trial the defense attorneys repeatedly asked Agent Major if his purpose in going to Ardmore was to "entrap" the appellant. On each occasion Agent Major's answer was in the negative. In one instance, Mr. Major pointedly explained:

I can't manufacture a situation that already exits. If they are sellers, I can't make them sellers. If they are not sellers, then, I can't make a buy.

Apart from this line of cross-examination, no evidence was presented which might indicate the possibility of entrapment. The mere fact that defense attorneys propound questions concerning entrapment during cross-examination is by itself insufficient to establish the necessary factual and concrete evidentiary disagreement which requires a jury instruction for its resolution. Under these circumstances, the judge was not mandated to instruct the jury on entrapment defense. This assignment of error is without merit.

■ In his third assignment, the appellant asserts that the punishment is excessive. In *Hair v. State*, 597 P.2d 347, 350 (Okl.Cr.1979), we stated (citing *Dobson v. State*, 562 P.2d 916 (Okl.Cr.1977)):

[T]he question of excessiveness of punishment is to be determined by a study of all the facts and circumstances surrounding each individual case, and we do not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence was so excessive as to shock the conscience of the Court.

After a study of all the facts in this case, we are unable to say that the sentence imposed shocks the conscience of this Court. The judgment and sentence is AFFIRMED.

CORNISH, J., concurs.

BRETT, P. J., dissents.

BRETT, Presiding Judge, dissenting:

Although I agree that the question of entrapment does not exist in this case, I must respectfully dissent in accordance with *Conde-Hernandez v. State*, 565 P.2d 705 (Okl.Cr.1977), in which this Court held that an unexplained time gap of ten (10) days and an unknown method of transportation resulted in an inadequate establishment of chain of custody.

For the State Agent to merely say that he left the drugs in his briefcase in the trunk of his car during a thirteen (13) day period, justifying this delay because he was working on other cases, and failing to explain why he didn't deliver the drugs to the State Bureau on one of his numerous trips to Oklahoma City during that time is inexcusable. The inadequately explained time gap in this case is as defective as the unexplained gap in *Conde-Hernandez*. Furthermore, although the method of transporting the contraband was unexplained in the precedent case, I believe that the alleged presence of the drugs in this case in the trunk of the Agent's car from August 24 to September 6, 1978, fails equally as to transportation.

Admissibility of evidence must be based on the proper foundation, one essential element of which is the establishment of a chain of custody. To hold otherwise is to invite abuse by law enforcement and to abrogate the due process rights of a defendant.