**Teresa LONG, a/k/a Vicki Williams, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-80-474.**

Court of Criminal Appeals of Oklahoma.

Nov. 18, 1982.

J. Roger Henson, Henson, Henson & Henson, Shawnee, for appellant.

Jan Eric Cartwright, Atty. Gen., David W. Lee, Asst. Atty. Gen., Chief, Crim. Div., Tomilou Gentry Liddell, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant was convicted of Shooting With Intent to Kill and Robbery with Firearms, Pottawatomie County Cases No. CRF–78–372 and CRF–78–373, and was sentenced to respective consecutive terms of twenty (20) and twenty-five (25) years' imprisonment. By Order of this Court, she was granted leave to file her appeal out of time.

At 8:30 a.m. December 24, 1978, Robert Root, the proprietor of Haney's Service Station Number Five, at Hardesty and Highway 177, in Pottawatomie County, observed two females, one black and the other white, approaching his station from a car parked approximately one quarter to one half mile down 177. After the women entered the station, the white female, identified as the appellant by Root at the trial, pulled out of her coat pocket a Clerke .32 caliber five-shot chrome plated revolver and said, "This is a holdup." The women then proceeded to take the contents of the cash register, the cash box, and several money bags, of a total value of approximately $700. The appellant also took Root's wedding ring and Timex watch.

Root managed to escape, running first east, onto the highway, back around the station, then west. While running around the station, he heard a shot and observed the appellant pointing her .32 caliber revolver at him; he then heard a second shot. At trial, Root identified the .32 caliber revolver as the one used in the robbery; he identified the overcoat as the one worn by the appellant; and he identified the money bag, checks, wrist watch and ring taken from him.

After Root left the station, he went to the car which had been parked a short distance away by the robbers, and he took a purse and the ignition key. Shawnee Police Officers Goldstein and Shirey were dispatched to the crime scene on the morning of December 24, and then, upon the advice of Root, went to the suspects' car, where they found the two females who had robbed the station and two black males. They recovered money which had been lying on the front seat.

Shawnee Police Officer Merritt saw the appellant twice at the police station on December 24, and the second time, at 11:30 a.m., he made a tape recording of her statement to him. Police Officer James identified the .32 caliber revolver as the weapon he received from Officer Goldstein at the police station on December 24. He positively identified the weapon by his initials,

which he had carved into the nickel of the gun with his pocket knife. He retained custody of the revolver until trial by securing it in his evidence locker.

The appellant testified in her own behalf that she had committed the robbery under duress and out of fear for her own life from Glen Kemp, whom she identified as one of the black males at the scene of the arrest. On cross-examination, she admitted that she had a prior armed robbery conviction.

In the initial assignment of error, the appellant contends that she was denied a fair trial due to the failure of the examining magistrate at the preliminary hearing to maintain a detached impartiality. At that hearing, the admissibility of the .32 caliber revolver was challenged because there was a slight discrepancy (the inversion of two digits in a six-digit number) in the serial number on State's Exhibit Number Two, the revolver allegedly recovered from the scene of the arrest, and the serial number on the police identification cover sheet attached to that revolver. The magistrate directly examined Officer Goldstein regarding this discrepancy, and that witness responded that the discrepancy probably arose either from his error in copying down the number from the revolver or the typist's error in copying that number on the cover sheet. Officer Goldstein testified that he was satisfied that Exhibit Two was the same gun recovered from the scene. The magistrate then admitted the revolver into evidence.

According to the appellant, this examination by the magistrate was tantamount to the magistrate's assuming an adversarial position, depriving him of his constitutional right to a fair trial. Okla.Const. Art. 2, § 6. The appellant cites *Sadberry v. Wilson,* 441 P.2d 381 (Okl.1968); *Pitman v. Doty,* 441 P.2d 428 (Okl.1968); and *Texaco v. Chandler,* 354 F.2d 655 (10th Cir.1966), for the proposition that every litigant is entitled to an impartial judge; and that the requirement is one not only of actual impartiality but also of the appearance of detached impartiality.

To prevent judicial bias a party may file an application for the disqualification of the presiding judge. 20 O.S.1981, § 1403. However, the appellant now before this Court did not make application for disqualification; neither did she object on the basis of the magistrate or judge's neutrality at either the preliminary hearing or the trial.

Furthermore, the transcript of the preliminary hearing reveals that, at no time during the preliminary hearing, did the magistrate exceed the limits of appropriate inquiry or even approach the circumstances which existed in the cases cited by the appellant. The magistrate simply attempted to clarify a discrepancy necessary to his determination of the admissibility of the .32 caliber revolver into evidence. As in *Banks v. State,* 578 P.2d 370 (Okl.Cr.1978), "The court's questions to various witnesses in no way indicated its view of, or expressed an opinion upon the guilt or innocence of the defendant or upon the credibility of any witness." *Banks,* supra, at 374. Preliminary questions of admissibility are for the trial court, and such rulings will not be overturned by this Court except upon a showing of abuse of discretion by the trial court. *Felts v. State,* 588 P.2d 572 (Okl.Cr. 1978); 12 O.S.1981, § 2105. There was no error.

In the second proposition, the appellant argues that the State failed to lay a proper foundation for the admission of a taped statement taken from her, on December 24, 1978, at the Shawnee Police Station. Citing *U.S. v. McKeever,* 169 F.Supp. 426 (S.D.N.Y.1958), rev. on other grounds, 271 F.2d 669 (2nd Cir.1959), the appellant argues that three of the seven required elements were not satisfied prior to admission of the tape, and, since no Oklahoma case specifically requires the *McKeever* elements, the prejudice versus relevance standard of Oklahoma should apply. 12 O.S.1981, §§ 2402–2403. Specifically the alleged deficiencies included the following: the recording device was not shown to be capable of taping the conversation; the operator of the recorder was not shown to be competent to operate it; and the recorded statement was not shown to

have been voluntary. The proffered conclusion is that, the State having failed to lay a proper foundation, the admission of the recording was error.

First, the preliminary question of admissibility is left to the discretion of the trial court, and in the case before us the court did conduct an *in camera* hearing on the contents and the admissibility of the recording. It was established that Officer Merritt took the statement after the appellant had acknowledged her understanding to both Officers Merritt and James of the *Miranda* warning each of them gave her.

At the in camera hearing, the appellant objected to the recording on the basis of voluntariness and the hearsay rule. Although no specific delineation of a finding of each of the seven *McKeever* requirements appears in the record, the trial court overruled defense objections and admitted the tape. The court found that the tape consisted of an admission by the appellant and, therefore, was not violative of the hearsay rule and that the question of voluntariness was settled by the tape's own inclusion of the *Miranda* warning and response to it by the appellant.

Although *McKeever,* supra, is only persuasive authority in this jurisdiction, essentially the same rule was established by this Court in *Brewer v. State,* 414 P.2d 559 (Okl.Cr.1966). However, more recently it has been stated with regard to sound recordings, "... A proper foundation was laid for its [video tape with audio recording] admission by showing that it truly and correctly depicted the events and persons shown." *Broadus v. State,* 553 P.2d 515 (Okl.Cr.1976). Officer Merritt appeared before the jury to verify the authenticity and contents of the tape. The trial court properly exercised its discretion in resolving the initial question of voluntariness, and it was then left to the jury to resolve the ultimate determination of voluntariness, which it did here in favor of the State. Furthermore, the trial court's ruling on the alleged hearsay violation was correct. 12 O.S.1981, § 2801(4)(b)(1). And, finally, there is no demonstration of prejudice to the appellant

by the admission of this tape, the contents of which were substantially testified to by her when she took the stand to testify in her own behalf. Therefore, its admission was not error under the relevance test set forth in the Evidence Code. 12 O.S.1981, §§ 2404, 2403. The second assignment of error is unfounded.

The third argument on appeal concerns evidence of a prior conviction for armed robbery elicited of the appellant by the State on cross-examination. It is urged that error resulted when the judge did not specifically state to the jury that the evidence was to be considered for impeachment and not for the purposes of character evidence to prove that the appellant acted in conformity on this occasion with a prior bad act. 12 O.S.1981, § 2404.

In addition to the trial court's statement at the time of the admission of the evidence, that the purpose of the evidence was impeachment, the court instructed the jury as follows:

> ... This evidence was not admitted as tending to prove the guilt or innocence of the defendant of the specific offense charged in the Information in this case, but should you find from the evidence that such other convictions have been had, you may, in your discretion, consider the same, as such factors may or may not, in your judgment, affect the weight and credit which you will give to the testimony of the defendant, *but for no other purpose* ... (Emphasis added).

■ This is a clear and straightforward instruction on the proper use of the challenged evidence. As is stated in the Evidence Code, evidence of a prior conviction is admissible to attack the credibility of a witness when it is elicited on cross-examination. 12 O.S.1981, § 2609. The impeachment on cross-examination was proper.

In her fourth proposition of error, the appellant contends that the trial court erred in basing Instruction Number Four on the former statute, 21 O.S.1971, § 652, rather than the statute, as amended, in effect at the time of this offense, now 21 O.S.1981, § 652.

■ First, it is noted that the appellant failed to object to Instruction Number Four, which operates as a waiver of any but fundamental error on appeal. *Kelsey v. State,* 569 P.2d 1028 (Okl.Cr.1977). To determine whether there has been fundamental error, we look to the instruction and its appropriateness. Instruction Number Four was given as follows:

> Number Four: If you, therefore, find from the evidence and beyond a reasonable doubt that the Defendant did unlawfully, wilfully, wrongfully and intentionally shoot at one Robert K. Root with a firearm with the intent to kill the said Robert K. Root, all as alleged in the Information and as defined in these Instructions, then you will find the Defendant guilty of the crime of Shooting with Intent to Kill in case number CRF–78–372, and so state in your verdict. It will, then, be your duty to assess the punishment therefor at imprisonment for any term not exceeding twenty years.

The appellant urges that the amended statute requires that a person actually shoot *and hit* the victim; and that the maximum punishment under the amended statute which defines the offense of shooting with intent to kill is "not to exceed life," rather than "twenty" years, as the jury was charged.

■ Taking these contentions in reverse order, this Court finds that the punishment argument must fail because, if error occurred, the benefit of that error inured to the appellant.

■ However, the punishment charge to the jury of twenty years is in accordance with the lesser crime of Attempting to Kill Another in Any Manner within the amended Section 652. This crime, which was supported by the evidence, does not require that the victim actually be hit either by the bullet or by any other weapon used in an assault. Therefore, the only merit to the appellant's argument goes to the name used to describe the offense, and, consistent with the true nature of the conviction, the judg-

ment should be modified to correctly reflect that charge of which the appellant was convicted.

Finally, this Court is asked to find that the punishments imposed are excessive and constitute cruel and unusual punishment under the circumstances. Those circumstances are set forth in the appellant's brief as follows: The appellant, who is only twenty-one years of age, is the mother of three dependent, minor children; that she was acting under duress during the robbery; that the money was recovered; that no one was harmed.

This Court will not modify a sentence imposed by a jury within the bounds of the law absent excessiveness. *Johnson v. State,* 625 P.2d 1270 (Okl.Cr. 1981). The penalties imposed for both offenses fell well within the limits set by law; no error asserted on appeal has been found to have merit; and none of the grounds provided as special circumstances in this particular case are persuasive. Therefore the judgment and sentence in CRF–78–373 is affirmed as pronounced. However, the judgment in CRF–78–372 must be changed to conform with the amended statute, that is the crime of Attempting to Kill Another in Any Manner, as set out above; and As Modified the judgment and sentence in that case is also Affirmed.

It is therefore the further order of this Court that the District Court of Pottawatomie County and the Department of Corrections correct the records of appellant to reflect a conviction for "Attempting to Kill Another in Any Manner," in CRF–78–372.

BUSSEY and CORNISH, JJ., concur.