Dannye Edward ARMSTRONG, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–168.

Court of Criminal Appeals of Oklahoma.

Sept. 24, 1975.

Pete Silva, Jr., Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

BLISS, Judge:

Appellant, Dannye Edward Armstrong, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–74–1444, for the offense of Robbery With Firearms, in violation of 21 O.S.1971, § 801. The jury fixed his punishment at a term of five (5) years' imprisonment and from this judgment and sentence, a timely appeal has been perfected to this Court.

The State's first witness at trial was Johnny Dewayne Coday who testified that he was employed with American Airlines with his working hours being from 4:30 p. m. to 12:30 a. m. He further stated that on the 8th day of May, 1974, he went to the Git–N–Go store on Pine and Sheridan Streets at approximately 12:45 a. m. He stated he remained at said store talking with William James Turner until approximately 2:00 a. m. During his conversation with Turner, he observed the defendant and two other young black males enter the store. At this time an evidentiary hearing was held outside the presence of the jury, and after the taking of testimony the trial court ruled that the in-court identification of the defendant would be permissible as the witness' identification of the defendant was based upon his personal observations on the evening of the conversation with Turner.

Coday further testified that the three youths entered the store, bought some small items, and asked Turner and himself if they had seen a blue Volkswagen. He testified that the boys left at this time but returned shortly and bought soft drinks and again asked about the blue Volkswagen. As he was leaving the store he observed the defendant was in the phone booth outside the store and the other two youths appeared to be leaving the store. When he arrived at his home he received a telephone call from Turner who related to him that he had been robbed. He then returned to the store.

William James Turner testified that he was employed as a clerk for the Git–N–Go store at Pine and Sheridan and was so employed on the 8th day of May, 1974, and that his working hours were from 11:00 p. m. to 7:00 a. m. He testified that at approximately 2:30 a. m. on that morning he was robbed by three black youths, one of whom used a blue steel pistol.

At this time an evidentiary hearing was held to determine whether or not the witness would be allowed to make an in-court identification of the defendant. At the close of taking testimony during the evidentiary hearing, the trial court ruled that an in-court identification of the defendant would be permissible because said identification would be based upon the witness' personal observation on the morning of the robbery.

The witness then identified in court the defendant as one of the men who robbed him on May 8, 1974. He stated that the defendant pointed a gun at him and ordered him into the back room of the store where the defendant took the witness' wallet. He stated he did not see who took the money out of the cash register.

The State then rested.

The first witness for the defense was Mr. Don E. Austin, Tulsa Court Clerk, who testified that the defendant was arraigned on the 27th of June, 1974, on the present charge and that the bond was set at $10,000, but subsequently raised to $50,000 at arraignment. He further testified that the County court records did not reflect any prior juvenile court proceedings.

Mr. Willie Armstrong testified that he was the father of the defendant and that the defendant was one of ten children. He said that he had worked two jobs, one at the Post Office and one as a night janitor to support his family. He stated that the defendant was 16 years of age and lived at home. Further, he stated that the defendant had been involved in a motorcycle accident in late April or early May and that as a result of said accident the defendant had scars on his face, forehead and shoulders from pavement burns. He stated that the scars were visible for some weeks and as he remembered the scars were still visible on the 18th day of May, 1974, when he, the witness, left for Camp McCoy, Wisconsin, to satisfy his service duty. On cross-examination he testified that his son had been in Jane Phillips Hospital in Bartlesville, Oklahoma, for first aid treatment on the 28th or 29th day of May, 1974, but that he believed the defendant had the motorcycle scars during the first week of May, prior to the treatment in Bartlesville.

Debra Armstrong testified that she was the defendant's sister and that she was also aware that about the first of May, 1974, the defendant had scars on his face and body as the result of a motorcycle accident. She specifically placed the scene of the accident on Garrison Street in Tulsa County. She further stated that she was aware of the fact that the defendant had been involved in a second accident in Bartlesville subsequent to the accident in Tulsa. She placed the time of the first accident at about the time school was letting out for the summer.

The defense then rested.

The defendant's first assignment of error asserts the trial court erred in admitting testimony regarding the lineup identifications of the defendant. The defendant notes that witness Coday testified that Assistant District Attorney William G. LaSorsa instructed Coday and Turner not to say anything regarding identification in the presence of defense counsel nor to answer any of counsel's questions at the lineup. Defendant contends that although his counsel was present during the mechanics of the lineup procedure the orders given to the witnesses that they not make any statements regarding identification in the presence of defendant's counsel, nor answer any of counsel's questions, effectively denied the defendant his Sixth Amendment right enunciated by the Supreme Court in *United States v. Wade,* 388 U.S. 218, 87

S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). The defendant urges that such occurrences at the lineup operated to constitute an exclusion of his counsel from the single most crucial moment of the lineup procedure placing an indelible taint upon the identifications which the trial court failed to recognize and erroneously failed to exclude as required by *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

A hearing was held outside the presence of the jury to determine if the in-court identification was based on the lineup identification of the defendant and/or the photograph exhibition conducted subsequent to the robbery. In construing *United States v. Wade,* supra, we set forth recommendations and guidelines to be followed by the trial court in determining whether the in-court identification was based in part on the lineup identification or whether the witness would have been able to identify the defendant independent of the lineup identification. These guidelines appear in *Thompson v. State,* Okl.Cr., 438 P.2d 287 (1968), wherein we stated in the second Syllabus by the Court:

"In determining the admissibility of the courtroom identification of such witness, the trial court should conduct a hearing outside the presence of the jury and determine if, independent of the lineup identification, the witness can make positive identification of the accused, taking into consideration the following: the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup."

We need only note that the witnesses' identifications of the defendant were based solely upon their observations at the time of the robbery and on the evening of the robbery, and not upon who they observed in any photograph exhibition nor at the pretrial lineup.[1]

---

1. Witness Coday's statement supporting such a conclusion is found in the record as follows:

"Q. Mr. Coday, let me ask you one question. The identification you're making here in court today, is it based on what you observed in the early morning hours of the 8th at the Git-N-Go store, or are you basing it on what you observed in a picture or in a lineup?

"A. Basing it on what I seen in the Git-N-Go store." (Tr. 215)

This also formed the basis of the trial court's finding reflected in the record at Tr. 218–219, as follows:

"THE COURT: Insofar as the defendant's objection to the in-court identification is concerned, the Court would note that the clear and unequivocal testimony of the witness is to the effect that his identification here in court today is based upon the fact that this is one and the same man as the man he identified in the Git-N-Go store on the night in question, and not based upon any photographs that he saw or observed, or upon the lineup identification."

Witness Turner's testimony supporting such a conclusion is reflected in the record wherein it states at Tr. 258–259:

"Q. Jim, you've made an identification here of a man who robbed you on the 8th of May. Are you basing that identification from what you observed at the store on the 8th of May, or the photograph you observed, or the lineup you observed?

"A. It's on the—the store.

"Q. On what you observed at the store?

"A. Uh-huh."

Again, this was the basis of the trial court's finding reflected in the record at Tr. 261 at the close of the evidentiary hearing wherein it states:

"[THE COURT] . . . Insofar as the testimony of this witness is concerned, the Court would further note and observed that the witness has clearly and unequivocally stated that he is identifying the defendant here in Court today as the man who was in the store on the date and time in question, rather than from any photographs that he saw or observed, or from the lineup . . . ."

After carefully reviewing the record, we are convinced the identifying witnesses did not rely on the pretrial identification to identify the defendant at the time of trial, and that the in-court identifications were based on the defendant's appearance at the scene of the crime. See, *Carter v. State*, Okl.Cr., 478 P.2d 912 (1970) and *Holt v. State*, Okl.Cr., 506 P.2d 561 (1973). For the reasons herein stated, we find the defendant's first assignment of error to be without merit.

Defendant's second assignment of error asserts the evidence adduced at trial was insufficient to support the verdict if the identification of the defendant were excluded. In light of our disposition of defendant's first assignment of error and especially in light of the eye witness identification by the robbery victim, William James Turner, we find that the testimony of the witnesses, if believed, was sufficient to sustain the verdict of the jury. For this reason we find defendant's second assignment of error to be without merit.

The defendant's final assignment of error asserts that the accumulation of errors and irregularities in the trial, when considered as a whole, deprived the defendant of a fair trial and denied him due process of law to which he is entitled under the Constitution of the State of Oklahoma and the United States. The defendant cites *Lovell v. State*, Okl.Cr., 455 P.2d 735 (1969), wherein the Court stated in Syllabus number 4:

"When a review of the entire record reveals numerous irregularities that tend to prejudice the rights of defendant, and where a cumulation of said irregularities denies defendant a fair trial, the case will be reversed, even though one of said errors standing alone would not be ample to justify reversal."

After carefully examining the entire record and in light of our disposition of defendant's first and second assignment of error, we find no error that would justify modification or reversal, and for this rea-son we find the defendant's final assignment of error to be without merit.

In conclusion we observe the record to be free of any error which would justify modification or reversal, and the judgment and sentence is, accordingly, *affirmed*.

BRETT, P. J., dissents.

BUSSEY, J., concurs.

BRETT, Presiding Judge (dissenting).

I respectfully dissent to this decision. As I view the record before this Court, the evidence was insufficient to sustain this conviction. Likewise, I believe the identification was so tainted it should not have been admitted. Mr. Turner and Mr. Coday both testified that the photograph they selected was similar to the person who committed the alleged robbery. When they viewed the second lineup, they were both instructed to say nothing to defense counsel and to make their identification known to one officer only. This defeated the purpose for having the attorney present at the lineup. Mr. Coday testified that he identified the fourth person in the lineup, but Mr. Turner testified that he identified the fifth person in the lineup. Also, the descriptions of the hat worn by the alleged robber were in considerable conflict. Mr. Coday testified that the man he saw just prior to the robbery wore "A blue hat, came up to a point and it was—floppy ends; the front and back were pulled down." Mr. Turner testified that the man who committed the robbery wore "Kind of a beach hat,—kind of a reversible cloth hat, I guess you could say." In short, I believe the identification was based upon the photograph the two men picked out, notwithstanding what they testified to before the jury. As I interpret the testimony at both the hearing outside the jury and before the jury, the requirements of *Thompson v. State*, supra, were not met.

While it was not raised on appeal, I believe the Public Defender should have submitted the certification hearing record with this appeal, under the rules existing at the

time. Prior to the voir dire of the jury, defense counsel objected to the jurisdiction of the trial court, stating that a proper certification hearing was not held and that defendant's statutory and constitutional rights were thereby violated. This being a fundamental question it should have been presented with this appeal.