Bob Dale McDANIEL, a/k/a James Alfred Donald, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–180.

Court of Criminal Appeals of Oklahoma.

Feb. 28, 1978.

Rehearing Denied March 31, 1978.

Thomas W. Burns, Deputy Chief Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Givens L. Adams, Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Judge:

The defendant, Bob Dale McDaniel, also known as James Alfred Donald, Jr., was convicted of Robbery With Firearms, After Former Conviction of a Felony. In appealing his conviction and sentence of Two Hundred Fifty (250) years, the defendant claims that the trial court erred in failing to suppress the in-court identification of him by the victim. Further, he contends that the identification was tainted by improper pretrial procedures. We reverse.

Ms. Brenda Winton, proprietor of the Wintons' grocery store in Collinsville, Oklahoma, first saw the defendant on March 12, 1976, at about 3:00 p. m., when he came into the store and purchased a beer. She testified that he was in the store for three minutes, but then admitted that it could have been less. She looked at him as he came into the store because he was a new customer (most of the store's customers were regular), and she looked at him again when he paid for the beer.

Shortly before 7:00 p. m. the defendant returned and Ms. Winton noticed him as he held open the door for another couple to exit. She turned away and the defendant drew a pistol and put it against her back. When she felt the pistol, Ms. Winton turned to look at him again. The defendant demanded the store's money and she had to turn her back on him in order to remove the money from the cash register. She stated that her total viewing time of the defendant during the robbery was "a matter of seconds."

On the same evening, Ms. Winton was shown a photo lineup containing eight to ten photographs. After looking through the photos three times, Ms. Winton selected one bearing the name of James Alfred Donald, Jr., as the man who had robbed her. She later testified only one of the men pictured in the photo lineup fit the general description of the robber. Shortly after choosing the photograph, she was told that a wallet bearing the identification of James Alfred Donald, Jr., had been found in the suspect's vehicle.

Late that night, Ms. Winton was told by the police that the man she had identified was in custody, and she was requested to go to the Tulsa County jail for a lineup. There was only one person in the lineup fitting

the general description of the person who had robbed her. She was told to wait until all of the individuals in the lineup had identified themselves; she identified the defendant after he stated that his name was James Alfred Donald. Ms. Winton admitted at trial that the man she chose in this lineup was not the same individual she had chosen during the photo lineup. However, she asserted that the man she picked from the lineup was the one who had robbed her.

In *Arriola v. State*, Okl.Cr., 520 P.2d 690 (1973), we cited the case of *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), for the proposition that:

" ' * * * A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification. . . . ' "

■ It appears inherently probable that the manner in which Ms. Winton picked the defendant out of the lineup and the events leading up to it were highly suggestive. However, improper suggestiveness does not indicate conclusively that the in-court identification was unreliable, thereby requiring exclusion. The central question is whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In *Armstrong v. State*, Okl.Cr., 541 P.2d 213 (1975), we ruled that there was a sufficient quantum of reliability if the in-court identification was based solely upon the observation at the time of robbery and not upon pretrial identification.

■ In the second paragraph of the Syllabus of the Court in *Thompson v. State*, Okl.Cr., 438 P.2d 287 (1968), we adopted the guidelines set out by the Supreme Court in *United States v. Wade*, supra, to aid in determining whether an in-court identification was tainted by the pretrial identification. These guidelines include the consideration of: (1) the prior opportunity to ob-

serve the alleged criminal act; (2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description; (3) any identification of another person prior to the lineup; (4) the identification of the defendant by picture prior to the lineup; (5) failure to identify the defendant on a prior occasion; and, (6) the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which are disclosed concerning the conduct of the lineup.

The Supreme Court of the United States has recently reemphasized "the dangers inherent in a pretrial identification conducted in the absence of counsel," in *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977). In that case, the victim was taken to the suspect's preliminary hearing. The police officer who accompanied her told her that she was going to view a suspect and that she should identify him if she could. She was asked to sign a complaint bearing the defendant's name, and at the hearing the defendant's name was called and he was brought before the bench. The victim heard the charges read and heard the prosecutor's statement of evidence against the defendant. She was then asked whether she saw her assailant in the courtroom and replied affirmatively. The defendant was not represented by counsel.

■ In *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Supreme Court held that the right to counsel for in-person identifications did not attach until formal criminal proceedings had been initiated. However, regardless of whether a person has, or is, entitled to counsel, a lineup must be conducted in such a way as to avoid any possibility of prejudice and to insure that any in-court identification is based on what the witness saw at the commission of the crime rather than at the lineup. Any unnecessarily suggestive identification procedures may constitute a violation of the right to due process of law. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Ford v. State*, Okl.Cr., 532 P.2d 89 (1975).

■ In the instant case, the in-person lineup was conducted in a highly suggestive manner, subsequent to the selection of a photograph of an entirely different person. Although Ms. Winton testified that she was sure that the man she had chosen at the lineup was the man who had robbed her, the record raises a question whether her in-court identification was based solely upon her observation during the robbery. We, therefore, find the potential for improper influence to have been great and find that there was insufficient indication that the in-court identification was not influenced by the pretrial identification. We have no alternative other than to rule that it was error to admit the in-court identification.

Due to the determinative nature of our findings in this assignment of error, we need not address the other issues raised in the defendant's brief. For the above and foregoing reasons, the judgment and sentence of the trial court is *REVERSED* and *REMANDED* for further proceedings not inconsistent herewith.

BUSSEY, P. J., and BRETT, J., concur.