**Franklin Geroy GREEN and Leroy McQuietor, Appellants,**

v.

**The STATE of Oklahoma, Appellee.**

**Nos. F–77–319, F–77–660.**

Court of Criminal Appeals of Oklahoma.

April 26,1979.

John C. Muntz, Hugo, for appellant Green.

Hack Welch, Hugo, for appellant McQuietor.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Bill J. Bruce, Asst. Attys. Gen., Robert L. Johnston and Andrew Wilcoxen, Legal Interns, for appellee.

## OPINION

BRETT, Judge:

The appellants, Franklin Geroy Green and Leroy McQuietor, were convicted of Robbery With Firearms, 21 O.S.1971, § 801, in the District Court of Choctaw County. In Case No. CRF–76–16, Green was convicted After Former Conviction of a Felony and sentenced to thirty (30) years' imprisonment. McQuietor was sentenced to fifteen (15) years' imprisonment in Case No. CRF–76–16. Since the appellants were convicted of the same crime below and the determinative issue is identical, we have consolidated their appeals in the interest of judicial efficiency. We focus only on those facts pertinent to the decisive issue.

The State's evidence proved that on April 15, 1976, at about noon, two black men entered the Baskin Grocery, located on Schooler Lake Road north of Sawyer in Choctaw County. They forced Leroy Baskin and his mother into the bait room, instructing them to lie face down on the floor. After beating the victims on the head with a pistol, one of the robbers grabbed the cash register and they fled. Neither of the victims was able to identify either of the appellants as one of the robbers.

Earl Ballard, former Sheriff of Choctaw County, provided the crucial testimony at the trial of both appellants. After observing the robbers leave the scene of the crime, he informed the police of his observations and later that afternoon identified three suspects in a lineup at the County jail.

The only assignment of error we need consider is that the trial court erred in failing to sustain the appellants' objections to the in court identification of them by Earl Ballard.

Ex-sheriff Ballard had seen three black males flee from the Baskin store. Later that afternoon, he identified the appellants from a lineup as the men he had seen leaving the scene of the robbery. Appellants assert that this lineup, held in a hallway outside the Choctaw County jail, was so suggestive that it "tainted" Ballard's subsequent in court identification, and that Ballard should not have been permitted to identify them in court.

The evidence reveals that the lineup consisted of the three suspects, all young black men, three older black men, one Indian man

and possibly one other young black male. Two of the older men were known by Ballard to be janitors at the courthouse, but at McQuietor's trial he testified that he could not remember whether they had participated in the lineup. At both the preliminary hearing and the trial of Green, however, he had testified as to the participation of one of them. The third older participant was a twin brother of one of the janitors. There is conflicting testimony regarding whether or not the three suspects were handcuffed.

We note that the State made no effort to preserve the adequacy of the lineup by complying with the procedures we recommended in *Thompson v. State,* Okl.Cr., 438 P.2d 287 (1968). No record was made of what was said, no pictures were taken and the appellants were not provided counsel prior to this confrontation. However, it is apparent from the facts before us that such preservation would not have inured to the benefit of the State.

■ The United States Supreme Court has stated that unnecessarily suggestive pretrial identification procedures may be conducive to irreparable mistaken identity. See *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Such procedures may amount to a denial of due process, thus necessitating suppression of the tainted identification testimony. However, although the pretrial confrontation may be needlessly suggestive, it does not strictly follow that the in court identification must be suppressed. Rather, the Supreme Court has adopted a "totality of circumstances" test; that is, a case by case determination of whether there is a very substantial likelihood of irreparable misidentification. See *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The identification issue has been even further defined in the case of *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In that holding, the Supreme Court said that even an unconstitutional pretrial confrontation will not invalidate a courtroom identification that can be established as independently reliable.

■ Since no doubt remains that this unnecessarily suggestive lineup denied the appellants due process, we must consider whether the identification by Earl Ballard is independent of and severable from the influence of that Choctaw County jail lineup which he observed a few hours following the robbery.

Witness Ballard was returning from a fishing trip as he approached the Baskin Grocery at about noon on April 15, 1976. Proceeding east along the county road, he passed a small yellow car before reaching the intersection of the county road and Schooler Road, where he prepared to turn his truck, with boat and trailer, into the grocery store parking lot. At this point, he glanced to his left and back to the west and saw two black men running away from the store, one carrying a cash register. Ballard's opportunity to observe the men at the scene continued for an estimated 10 to 15 seconds. It was likely that the witness could not devote full attention to observing the incident, as he stopped his truck, got out, yelled at the men, walked back beside his boat and got his weapon from a compartment in the boat. The lid to the compartment had unspecified material piled on top of it and the witness had to grope for the gun.

The witness subsequently provided general descriptions of the car and of two of the three men to the Sheriff, describing the vehicle as a small, yellow, compact car and the occupants as three black men. Two of the men had beards and one of those two was heavier than the other; one of the men wore a brown shirt, while another wore a light-colored shirt. No description was given of the driver.

Ballard identified all three men in the lineup, two and one-half to three hours later, including the driver, whom he had not been able to describe earlier. Having viewed the car after the arrest, the witness stated that it was small and yellow with a black stripe below the door handles, solid chrome wheels and black upholstery. Bal-

lard could not testify as to who else, besides the three suspects, or how many had participated in the lineup, nor what the defendants had worn in the lineup. He stated that he just did not pay much attention to these other factors because the three defendants "stood out like a sore thumb." At trial he also stated that he recognized the three men as persons he had seen previously around Hugo.

The circumstances of the identification sustained in *Manson v. Brathwaite,* supra, contrast sharply with the circumstances here. In *Manson* an undercover police officer made a heroin purchase. The officer stood face to face with the seller for a couple of minutes, and adequate lighting was present. The officer later gave a detailed description of the seller, even including the shade of his complexion and facial structure. The fact that the witness was later shown a single photograph from which he identified the seller was held not to raise a very substantial likelihood of irreparable misidentification. In the case at bar, however, the witness happened upon an unexpected and rapidly unfolding situation. He had a very brief period, perhaps 10 to 15 seconds, in which to view three men and one car. Two of the men ran fast on foot for 25 to 30 feet and entered a car, whereupon the car moved slowly for about 10 feet to the witness' vehicle before speeding away.

We are thus convinced that Ballard's eyewitness observation of the robbers cannot be severed from his subsequent identification of these appellants in the lineup. In reaching this conclusion, we have considered the factors suggested by the United States Supreme Court in determining the reliability of identification testimony:

> ". . . These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. . . ." *Manson v. Brathwaite,* supra. (Citation omitted)

The quality of Ballard's observation of the robbers at the scene of the crime is questionable. His description to the police was extremely general, although he was able to supply more detail after the lineup. There is no dispute that Ballard felt positive about his identification, but this is a subjective factor uncorroborated by sufficient detail. Finally, the lineup was held only several hours after the robbery but, within the framework of these facts, that could have served to provide specificity to a vague notion just as well as to efficiently refresh an accurate memory.

Because there exists a substantial likelihood that this lineup led to an irreparable misidentification of the appellants by Earl Ballard, these judgments and sentences are *REVERSED.* On remand to the District Court of Choctaw County for further proceedings consistent with this decision, witness Ballard's in court identifications must be excluded.

■ We note, further, that appellant Green urges in his final assignment of error that the convictions used to support his after former charge were obtained under an unconstitutional statute whereby a discrepancy existed between males and females in certifying them to stand trial as adults, Laws 1968, ch. 282, § 101. We dealt with this issue in our recent decision of *Edwards v. State,* Okl.Cr., 591 P.2d 313 (1979), and advise the appellant at this time that the appropriate remedy remaining to him is to seek post conviction relief in the District Court that originally convicted him.

CORNISH, P. J., and BUSSEY, J., concur.