**Don GOUDEAU, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-80-98.**

Court of Criminal Appeals of Oklahoma.

Nov. 13, 1981.

Kay Robbins Wall and Richard A. Pyle, Eufaula, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant was convicted in the District Court of McIntosh County, Case No.

F–79–32, of Burglary in the Second Degree, and sentenced to two (2) years' imprisonment. The focus of his appeal is the in-court identification of him by Patsy Mann, which he alleges was based upon an unconstitutional pre-trial confrontation.

On the afternoon of February 28, 1979, Patsy Mann was approaching her home when she observed a yellow Buick four-door with a tan vinyl top parked in her driveway. One man was sitting in the driver's seat and a second man was running from her home. She stopped her pickup approximately 120 feet from the strange car and observed the situation for one and one-half to two minutes before backing up and pulling off, at which time she noticed the Buick drive off in the opposite direction.

Mrs. Mann drove to her neighbor's house, the Holladays, to use the telephone. While calling both the McIntosh County Sheriff's Office and the Checotah Police Department, she described the car with two men in it to the Holladays and their visitors, and these neighbors took their pistol and left in pursuit of the car, which they found stopped about ten miles down the road. The Holladays talked with the two occupants of the car, told them about their neighbor's experience and copied down the license tag.

The following day the appellant went to the Checotah Police Department and reported the following: He was headed toward Boynton to pick up his nephew to work on the appellant's car, which had been in need of repair, and he had stopped along the highway when a pickup pulled up behind him and the driver stepped out with a gun. The driver approached the appellant and explained that he was carrying the gun only to protect himself and that he was looking for some burglars who were driving a car that resembled the appellant's vehicle. Appellant permitted the man to search his car and advised the man that if he would call the laundry he could confirm that the appellant had just come from there. The man then asked the appellant if he could copy down his tag number, and, when the appellant so advised the police, they admitted that the appellant's tag number had been reported.

According to the appellant, three times after that he was called to the police station to be identified. The first two times there was no line-up, and the third time, soon after he arrived and was standing with Sheriff Beaver, Patsy Mann arrived with her husband and identified the appellant. This occurred approximately twenty (20) days after the crime.

The appellant alleges that the trial court erred in not suppressing Patsy Mann's in-court identification of him. He argues that the identification made at trial was not severable from an unconstitutional pre-trial show-up outside the police station.

At an in-camera hearing, Patsy Mann testified that right before charges were filed against the appellant she was called to the police station to identify him. Her husband called to tell her that Sheriff Beaver had Mr. Goudeau at the station. When she and her husband arrived at the station, they found the sheriff and Goudeau outside the building, and the sheriff asked her if this was the man who had broken into her home. Then, either her husband or the sheriff asked her to identify the appellant's car, and she was able to identify both the car and the suspect. She didn't make a positive identification immediately, but waited until she had had an opportunity to look him over very carefully.

Sheriff Beaver testified, at a subsequent in-camera hearing, that he had asked the appellant to come down to the station for questioning, and that the Manns had arrived on their own. He had not requested their presence, and Mrs. Mann's identification of the appellant and his car was either spontaneous or in reply to her husband's question.

The fact that this pre-trial show-up was unnecessarily suggestive was acknowledged by the Honorable John D. Boydston at the in-camera hearing. His stated reason for overruling the objection to Mrs. Mann's in-court identification was her own attention to detail and positive assertion that the appellant was the man she saw in her driveway on February 28.

■ An unnecessarily suggestive pre-trial show-up is in contravention of a defendant's right to due process. Such suggestiveness may well lead to an irreparably mistaken identification. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). *Green v. State*, 594 P.2d 767 (Okl.Cr.1979). And even though the right to counsel may not have attached because the identification preceded the filing of charges, *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the pre-trial identification process "must be considered in such a way as to avoid any possibility of prejudice and to insure that any in-court identification is based on what the witness saw at the commission of the crime rather than at the lineup." *McDaniel v. State*, 576 P.2d 307 at 309 (Okl.Cr.1978).

■ However, should it be established the identification is independently reliable, the fact that the pre-trial show-up was unconstitutional will not prevent the witness from making an identification at trial. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Green v. State*, supra. Therefore, this Court must examine the record for evidence that Patsy Mann was basing her identification of Don Goudeau at trial on her observation of him in her driveway.

When Mrs. Mann arrived at her neighbor's home, she provided the men there with enough information to motivate them to pursue the burglars she saw at her home. She testified at trial that she gave Mr. Holladay a detailed description of the men, although she couldn't remember whether she had indicated that they were black. She also admitted that it was possible that all she had told her neighbors was that there were two men in a pale yellow car.

Mr. Holladay then testified that Mrs. Mann described the vehicle as cream colored or yellow with a brown top; all he could remember about her description of the suspects was that they were two men. Paul Durrett, one of the men at the Holladay home that day, testified that Mrs. Mann described only the vehicle and not the men, and that she didn't mention their race. The testimony of Ricky Lawson, also at the Holladay's, was in accord.

Furthermore, the State did not present the testimony of either party who had received the two calls made by Mrs. Mann to the Checotah Police Department or the McIntosh County Sheriff's Department immediately following the crime. Therefore, there is no evidence that she was able to describe any details of the two suspects to the authorities. Also, Deputy Sheriff Lee Hayes testified that, when he investigated the crime, he talked with Mrs. Mann and the only description she gave him of the suspects was that they were black.

At trial, Mrs. Mann testified in detail regarding the appearances of the two men. She said that the driver was a black male, with medium brown skin and an afro hairdo. He was medium height and had a heavy build. He was wearing a yellow windbreaker over a dark shirt, with medium blue pants, possibly faded blue jeans. His companion, who ran from the east side of her home, was of a slighter build, with shorter hair and very dark skin. He was wearing a dark print shirt with the sleeves rolled up and dark pants. Misters Holladay, Durrett and Lawson, who had stopped and searched the appellant's car after their neighbor's report, provided similar identifications.

■ The crucial point here is that there is no evidence of any detailed description provided by the only witness to the crime prior to the trial. Although she was a very positive witness and gave attention to detail in her description at trial, the record does not support a finding that her ability to identify the appellant at trial was wholly uninfluenced by either the unconstitutional show-up in front of the police station and/or the descriptions provided by her neighbors following their apprehension of the appellant and his companion. It is clear that she did not provide detailed descriptions of the suspects on the day of the crime, and the confrontation at which she identified the appellant came approximate-

ly twenty (20) days following her observation of the suspects outside her home. Although Mrs. Mann testified that she was certain that the man she identified at the one-on-one confrontation outside the police station was the same man she saw outside her home that day, the record raises a question whether her identification at trial was based solely upon her observation at the scene of the crime. "We, therefore, find the potential for improper influence to have been great and find that there was insufficient indication that the in-court identification was not influenced by the pre-trial identification." *McDaniel v. State*, supra, at 310.

The judgment and sentence of the trial court is reversed and remanded for proceedings consistent with this opinion, and at any subsequent proceedings Mrs. Mann's identification must be excluded.

BUSSEY and CORNISH, JJ., concur.