**Timothy Dean SMITH, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–756.**

Court of Criminal Appeals of Oklahoma.

Oct. 27, 1987.

Andrew E. Wood, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Timothy Dean Smith, appellant, was tried by jury and convicted of two counts of Feloniously Pointing a Weapon [21 O.S. 1981, § 1289.16], in Case No. CRF–84–519, in the District Court of Garvin County, the Honorable J. Kenneth Love, District Judge, presiding. The jury set punishment at two (2) years imprisonment for each count. Judgment and sentence was imposed in accordance with the jury's verdict, the sentences to run concurrently. We reverse.

The appellant raises seven assignments of error. Because we find the second assignment of error dispositive, that the prosecutor used the appellant's post-*Miranda* silence for impeachment purposes, we do not address the remaining assignments of error.

The appellant was arrested, given a *Miranda* warning, refused to make a statement and requested an attorney. At trial, the prosecutor used the appellant's post-*Miranda* silence for impeachment purposes, both during cross-examination and in closing argument to the jury.

During cross-examination, the prosecutor asked the appellant:

Q. Now do you remember back on—at one o'clock in the afternoon later that date Mr. Layton getting in touch with you to take your statement?

A. Oh, yes, Sir.

Q. And isn't it true that you wouldn't tell him, you wouldn't make a statement at that time while he was in the course of his investigation, isn't that right?

A. I wanted to speak with an attorney first, Sir.

Q. OK, now then you spoke with your lawyer, isn't that right?

A. Yes, Sir.

Q. And since that time you have never, until you took the stand today in front of this jury, told anyone else the story that you just told, did you?

The State then called officer Layton to the stand and the prosecutor asked the arresting officer:

Q. Did you make an effort on the twenty-second day of September, 1984, to take this man's testimony?

A. Yes, Sir.

.    .    .    .    .

Q. And did this man ever give you a statement as to what happened, his version of what happened?

A. No, Sir. I offered him an opportunity to give a written statement, and he declined.

Q. Did he tell you why he declined?

A. No, Sir, well, he stated that he didn't think his attorney would appreciate him giving me a written statement.

During closing argument, the prosecutor referred several times to the appellant's post-*Miranda* silence for impeachment purposes:

[B]ut the most damming [sic] evidence, the most damaging testimony, and the reason, quite honestly, that when we ask you to render your verdict here, we're

going to ask you disbelieve Timothy Smith's testimony, is because nobody knew his story, nobody knew his story until he came here in court on Friday and told you, nobody.... Ron Layton ... told you that Timothy Dean Smith wouldn't give his statement, he wanted to talk to his lawyer, and that's a Constitutional right right [sic] and a privilege—

[Defense]: Your Honor, I want to object at this time to these comments by counsel and the fact that he is invading the province of the jury again. He is telling this jury, trying to impassion them or inflame them by the reason and by the fact that Mr. Smith did not make any statement at the time he was arrested; and, of course, he has a complete constitutional right to do that. We would object to these—this particular line of argument by the state and we would also move for a mistrial at this time.

[Prosecutor]: It's in the evidence.

[Court]: Overruled.

[Prosecutor]: Thank you, your Honor.

[Court]: I'm sure you're acquainted with the great latitude given in closing arguments.

[Defense]: Yes, I am, your Honor.

[Court]: I was wondering. Go ahead.

[Prosecutor]: He was given the opportunity to recant his testimony. I asked him, "Why is it that you waited from September until March 22," September 22 to March 22, that's exactly six months, "why is it you waited that long to tell someone about it? We've got a criminal charge filed against you. Why is it you didn't tell the police? Why didn't you go to Ron Layton and tell your side of the story if that's what happened?" ....

[Defense]: Your Honor, at this time I would again object, and I would ask to approach the bench at this time.

[Court]: You may sit down. Make your record at closing argument.

The prosecutor continued this line of argument and defense counsel objected again. The prosecutor finished his line of argument concerning the appellant's post-*Miranda* silence by saying:

[Officer Layton] preserved for the record the fact that he tried to get hold of this man, and this man wouldn't talk to him; so he comes into court on that date—he comes into court to tell you the story for the first time, and then he tells you what in essence is a lie on the stand: if you believe our witnesses, it's a lie on the stand....

Defense counsel did not object, for by this time the trial judge had ordered the bailiff to tell defense counsel to sit down and had stationed a deputy sheriff behind defense counsel, in full view of the jury, to prevent further objections.

"[T]he use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violat[es] the Due Process Clause of the Fourteenth Amendment." *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). Two years before *Doyle,* this Court reached the same conclusion when we found "clear, fundamental, and reversible error", both when the State cross-examines a witness on her failure to come forward and make a statement prior to trial and when the State again stresses that failure to come forward during closing argument. *Buchanan v. State,* 523 P.2d 1134, 1137 (Okla.Crim.App.1974). Since *Doyle,* we have frequently found prosecutorial misconduct in using the accused's failure to give up the right to remain silent after receiving the *Miranda* warning, both when used in the prosecutor's case-in-chief or when used in cross-examination, *see Kreijanovsky v. State,* 706 P.2d 541, 543–44 (Okla.Crim.App.1985), and when used in closing argument. *See Gooden v. State,* 617 P.2d 248, 249–50 (Okla.Crim.App.1980).

*Miranda* requires the police to inform the accused of his right to remain silent and to warn him that, if the right to remain silent is surrendered, anything he says will be used against him. The *Miranda* warning implies that silence will carry no penalty, *Doyle, supra,* 426 U.S. at 618, 96 S.Ct. 2245, and the State assures the accused that invocation of his right to silence will not be used to penalize him. *Wainwright v. Greenfield,* 474 U.S. 284, 295, 106 S.Ct.

634, 641, 88 L.Ed.2d 623 (1986). Breach of that promise by the prosecutor constitutes fundamental unfairness. *Id.* We find that the appellant has been denied fundamental fairness in violation of the Due Process Clause of both Federal and State Constitutions.

"The duty of the prosecutor is to seek justice, not merely to convict." ABA Standards for the Prosecution Function, Standard 3–1.1(c) (1979).

> [A] prosecuting attorney is a public officer acting in a quasi-judicial capacity. It is his duty to use all fair, honorable, reasonable, and lawful means to secure the conviction of the guilty who are or may be indicted in the courts of his judicial district. He should see that they have a fair and impartial trial and avoid conviction contrary to law. Nothing should tempt him to appeal to prejudice, to pervert the testimony, or make statements to the jury, which, whether true or not, have not been proved.

*Mitchell v. State,* 408 P.2d 566, 573 (Okla. Crim.App.1965). A conviction must be based upon the testimony and evidence adduced at trial, not by passion, prejudice or unfair advantage engendered by a prosecutor's intemperate trial tactics. The "win at any cost" mentality manifested by this prosecutor has no place in the criminal justice system. Or, as Justice Douglas so succinctly phrased the proposition:

> The function of the prosecutor ... is not to tack as many skins of victims as possible to the wall. His function is to vindicate the right of people as expressed in the laws and give those accused of crime a fair trial.... [A prosecutor] is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Donnelly v. DeChristoforo,* 416 U.S. 637, 648–49, 94 S.Ct. 1868, 1874, 40 L.Ed.2d 431 (1974). Accordingly, for the foregoing reasons, the judgment and sentence is REVERSED and the case is REMANDED for a new trial.