**Billy Allen HARROLLE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–86–663.**

Court of Criminal Appeals of Oklahoma.

Sept. 28, 1988.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Billy Allen Harrolle, appellant, was tried by jury and convicted of two counts of Knowingly Concealing Stolen Property [21 O.S.1981, § 1713], Larceny of an Automobile [21 O.S.1981, § 1720], and Shooting With Intent to Kill [21 O.S.1981, § 652], After Former Conviction of Two or More Felonies [21 O.S.1981, § 51(B)], in Case No. CRF–85–988, in the District Court of Tulsa County, the Honorable Jay D. Dalton, District Judge, presiding. The jury set punishment at imprisonment for twenty (20) years for each count of concealing stolen property and larceny of an automobile, and forty (40) years for shooting with intent to kill. Judgments and sentences were imposed in accordance with the jury's verdict, the sentences to run consecutively. We affirm.

Around 10:30 p.m. on March 7, 1985, Jeff Holloway and his fiancee stopped at Mr. Holloway's auto repair shop to pick up some paperwork and make a telephone call. Mr. Holloway locked and secured the shop and drove to his parents' home. His company pickup was parked at the shop, unloaded and with the keys in the floorboard. Shortly after midnight, Mr. Holloway and his fiancee left his parents' home and, about two blocks from his shop, he saw his company pickup stopped at a traffic light. The truck was loaded with two engines, three tool boxes, a floor jack, two sets of mag wheels and tires, an air compressor and other personal property taken from the shop and from customers' cars. Mr. Holloway followed the truck onto the expressway.

Mr. Holloway caught up with the truck within a quarter of a mile and tried to pull alongside. The driver of the stolen truck swerved into the other lane and tried to hit Holloway. Mr. Holloway evaded and again pulled alongside the truck. The driver looked at Mr. Holloway and his fiancee, pulled a pistol, and fired one shot, which hit the windshield. Mr. Holloway gave up the chase, took the first exit off the expressway, and called the police from the nearest convenience store, giving them a complete description of the truck and the driver.

In the meantime, the driver continued down the expressway. A Tulsa police officer clocked the truck on radar at eighty-three (83) m.p.h. and gave chase. The driver exited the expressway, crossed a field and a ditch, and hit an eight-foot cyclone fence which separates the expressway from a residential neighborhood. The driver climbed on the hood of the truck, vaulted over the fence, and disappeared into the neighborhood. The police surrounded the neighborhood with approximately nine police cars and secured the perimeter. A K–9 unit arrived. The dog tracked the fresh scent and found appellant crouched next to a house behind a bush. After his apprehension, the police took appellant to Holloway's shop, where Mr. Holloway identified appellant as the driver who shot at him. Later that morning, a boy found a pistol containing one spent round and five live cartridges on a lawn near where the stolen truck crashed into the fence.

Appellant testified at trial and admitted on direct examination to being a five-time convicted felon. He claimed he visited

friends and his water pump failed on his truck as he drove home. He parked the disabled truck, took a shortcut to a convenience store through the neighborhood where he was arrested, and when he saw the police helicopter and the police cars circling the area, hid in the bushes because he feared the police.

For his first assignment of error, appellant asserts the trial court erred by failing to suppress the in-court identification of him by Mr. Holloway and his fiancee. Appellant argues the in-court identification was tainted by an unnecessarily suggestive one person showup, which led to irreparable mistaken identification. Appellant relies on *Goudeau v. State*, 637 P.2d 859 (Okla.Crim.App.1981), and *Leigh v. State*, 587 P.2d 1379 (Okla.Crim.App.1979). The State relies on *Plunkett v. State*, 719 P.2d 834 (Okla.Crim.App.1986), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 675, 93 L.Ed.2d 725 (1986). *See generally Annot.* 39 A.L.R.3d 791, § 12 (1971).

■■■ "[A]bsent special elements of unfairness, prompt on-the-scene confrontations [between a victim and a suspect] do not entail due process violations...." *Russell v. United States*, 408 F.2d 1280, 1284 (D.C.Cir.1969), *cert. denied*, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969). As a general rule, "it is not improper for the police immediately to return a freshly apprehended suspect to the scene of the crime for identification by one who has seen the culprit minutes before." *Id. See also Bennett v. State*, 649 P.2d 804, 805 (Okla.Crim.App.1982). "Viewing a suspect alone in what is called a 'one man showup,' when this occurs near the time of the alleged criminal act, does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy." *Plunkett*, 719 P.2d at 838–39. An on-the-scene confrontation between the victim and the suspect shortly after the commission of the crime may be justified where prompt identification is necessary to determine whether the suspect is the offender or whether the police officers should continue their search. *People v. McMath*, 45 Ill.2d 33, 256 N.E.2d 835, 837 (1970), *cert. denied*, 400 U.S. 846, 91 S.Ct. 92, 27 L.Ed.2d 83 (1970). Moreover, prompt on-the-scene confrontations between the suspect and the victim promote fairness to the accused where, as in this case, the identification was made at about 1:00 a.m. and, in all probability, there would have been a considerable delay in organizing a formal lineup. Such a delay could have led to the arrest and overnight detention of an innocent suspect, and the interruption of the search for the real criminal, if the man found hiding in the bushes had not been taken promptly back to the scene of the crime for identification by the victim. *See Stewart v. United States*, 418 F.2d 1110, 1113 (D.C.Cir.1969). While this writer is strongly opposed to one person showups, *see Chatman v. State*, 716 P.2d 258, 260 (Okla.Crim.App.1986) (Parks, P.J., specially concurring), I have no difficulty in finding an emergency situation existed which justified the one person showup under the facts of this case. However, I still maintain that, "[p]rudent police work would confine these on-the-spot identifications to situations in which possible doubts as to the identification needed to be resolved promptly; absent such need the conventional lineup viewing is the appropriate procedure." *Bates v. United States*, 405 F.2d 1104, 1106 (D.C.Cir.1968).

■■ On the other hand, a showup which is unnecessarily suggestive does contravene due process and may lead to irreparable mistaken identification. *Goudeau*, 637 P.2d at 861. The pre-trial identification process "must be considered in such a way as to avoid any possibility of prejudice and to insure that any in-court identification is based on what the witness saw at the commission of the crime rather than at the lineup." *Id.* If the in-court identification was not tainted by an impermissibly suggestive showup but rather resulted from the memory of the victim at the scene of the crime, independent of the showup, the in-court identification will not be suppressed. *Leigh*, 587 P.2d at 1384.

"[R]eliability is the linchpin in determining the admissibility of identification testimony...." *Manson v. Brathwaite*, 432

U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). "The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Bennett*, 649 P.2d at 806.

■ Turning to the facts of this case, Mr. Holloway and his fiancee drove alongside appellant for about a minute. They each had a clear view of appellant for several seconds, and their attention was highly focused on his face. The expressway was extremely well lighted at the point where the identification took place. When Mr. Holloway called the police from the convenience store, he described appellant as approximately forty-years-old, estimated his height from the way he sat in the truck as between 5'6" and 5'8" tall, his weight from between 160 lbs to 180 lbs, as wearing a green jacket, and with a balding head and a full, red beard which came down almost to his chest. After viewing appellant's color photograph taken shortly after his arrest, we find Mr. Holloway's description of appellant highly accurate. Appellant's balding pate and full, red "mountain man" style beard are quite distinctive. When Mr. Holloway identified appellant at the shop about thirty minutes after the confrontation on the highway, he expressed no doubt in his identification. We find no abuse of discretion in permitting the in-court identification. This assignment of error is without merit.

■ For his second assignment of error, appellant asserts the trial court erred by refusing to give his requested cautionary instruction on eyewitness identification. Appellant relies on *McDoulett v. State*, 685 P.2d 978, 980 (Okla.Crim.App.1985). When eyewitness identification is a critical element of the prosecutor's case and serious questions exist concerning the reliability of that identification, a cautionary instruction should be given to the jury. *Id.* Here,

Holloway and his fiancee had an opportunity to view appellant clearly; their identification of appellant was positive; there was no prior failure to identify appellant; their testimony remained positive and unqualified after cross-examination; and Holloway's prior description of appellant was highly accurate. *Id.* at 980–81. Accordingly, we find no abuse of discretion in the trial court's refusal to give appellant's requested cautionary instruction on eyewitness identification. *See Gilbert v. State*, 734 P.2d 328, 329 (Okla.Crim.App. 1987). This assignment of error is without merit.

For his final assignment of error, appellant asserts he was denied fundamental due process because the prosecutor, on cross-examination, used appellant's silence at the time of his arrest after being given the *Miranda* warning for impeachment purposes. Appellant relies on *Fields v. State*, 648 P.2d 43, 45 (Okla.Crim.App. 1982), and *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The State relies on *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). *Jenkins* involved use of pre-arrest, pre-*Miranda* warning silence for impeachment purposes and is inapposite under the facts of this case.

■ *Doyle* protects the accused's exercise of his right not to talk to police officers after being given the *Miranda* warning and assures him that his silence will carry no penalty. *Doyle*, 426 U.S. at 618, 96 S.Ct. at 2245. In the instant case, appellant testified that his brother picked up the disabled truck the morning following his arrest and that "I told the policemen when they arrested me the truck was down the street." (Tr. at 165–66) The prosecutor questioned appellant, trying to elicit the identity of the police officer to whom appellant made the statement. Appellant could not remember the officer's name. We find no breach by the State of its assurance that invocation of the right to silence will not be used as a penalty. *Cf. Smith v. State*, 744 P.2d 1282, 1284 (Okla.Crim.App.1987). This assignment of error is without merit.

Accordingly, for the foregoing reasons, appellant's judgments and sentences should be, and hereby are, AFFIRMED.

BRETT, P.J., concurs.

BUSSEY, J., concurs in result.